# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLEN JEROME SUPPLES, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 09-1141 |
| v. | ) Magistrate Judge Bissoon |
| | ) |
| CHARLES ADAMO, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the motion for summary judgment (Doc. 44) filed by Defendants Adamo, Porada, McConahy, Rhodes, Fanno, Russo, and Struthers ("Defendants") will be granted in part and denied in part.

Allen Jerome Supples ("Plaintiff") is a state prisoner currently incarcerated in the State Correctional Institution at Mahanoy, located in Frackville, Pennsylvania. Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq.*, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the Constitution of the United States, arising from his exposure to oleoresin capsicum spray ("OC spray") by guards at the Lawrence County Correctional Facility ("LCCF") on February 8, 2008; forced placement in a restraint chair for roughly four and one-half hours while still covered in the spray; and 13 days of confinement to the Restricted Housing Unit ("RHU") following the incident.

Defendants moved for summary judgment on September 3, 2010 (Doc. 44). Plaintiff responded thereto on October 4, 2010 (Docs. 48 – 49). This motion is ripe for disposition.

A. **Relevant Facts.**

On February 8, 2008, Plaintiff was a state prisoner temporarily housed at LCCF. Def.s' Concise Statement of Material Facts (Doc. 46) ¶¶ 1 – 2. Plaintiff's cellblock was on lockdown. Id. ¶ 4. Plaintiff yelled to another inmate in an adjacent cell in an attempt to find out the reason that the lockdown was occurring. Id. ¶ 7. Defendant McConahy, a corrections sergeant, yelled back to Plaintiff, asking why he was concerned about the lockdown, and telling him not to worry about it. Id. ¶ 8. Defendant McConahy further told Plaintiff "that since he was worried about the block being locked down, it would be locked down for the rest of the day." Id. Plaintiff responded "'I don't care . . . . I don't have to be here.'" Id. ¶ 9. Plaintiff also stated "'[m]an I don't care about the block being locked down. I don't care." Id. ¶ 11. Defendant McConahy responded that, since Plaintiff was so worried about it, he would keep the bock locked down. Id. ¶ 12. Plaintiff responded again "'I don't care if you keep it locked down. It doesn't matter." Id. ¶ 13.

Presumably, as a result of this verbal exchange, Defendant McConahy ordered Plaintiff to pack up his personal belongings, as he was going to be taken to the RHU. Id. ¶ 14. Plaintiff began to comply with this directive, but at some point, as he turned to face to door of his cell, Defendant McConahy shot him in the face with a burst of OC spray. Id. ¶¶ 21, 30; (Doc. 45-2). Plaintiff tried to wipe the spray from his face and eyes,[1] and asked Defendant McConahy why he sprayed him. (Doc. 46) ¶ 22. McConahy responded "'wait till [*sic*] [my] team arrive[s].'" Id. ¶ 23. About fifteen minutes later, a team of corrections officers, comprised of Defendants Rhodes, Struthers, Fanno, and Russo, appeared at Plaintiff's cell. Id. ¶¶ 24, 27. Defendant Rhodes, a corrections captain, ordered Plaintiff to tell her what had happened. When he

---

[1] Plaintiff did not try to wash the spray off with water. (Doc. 46) ¶ 32; (Doc 45-1) at 19.

complied, she "failed to listen," and sprayed him with another burst of OC, which hit him in the face and neck. Id. ¶¶ 28 – 29. Plaintiff again tried to wipe off the spray. Id. ¶ 32. Defendants left the vicinity of Plaintiff's cell, and waited fifteen minutes for the gas to take effect on Plaintiff. When they returned, Defendant Rhodes asked Plaintiff whether "he was going to comply." Id. ¶¶ 33 – 34. Plaintiff answered in the affirmative, and allowed himself to be handcuffed by Defendant McConahy. Id. ¶¶ 35 – 36.

As Plaintiff was being led from his cellblock, he asked for the OC spray to be cleaned off of his body. Id. ¶ 38. Plaintiff states in his deposition several times that he repeatedly asked Defendants to clean the OC off of him, and avers that he was "burning." (Doc 45-1) at 20 – 23. Plaintiff also alleges that he informed Defendants that he needed to use a toilet, but was not allowed to do so. Id. ¶ 70.

Plaintiff was taken by Defendants Rhodes, Struthers, Fanno, and Russo into a small room. Id. ¶ 41. On Defendant Rhodes's orders, Defendants Struthers, Fanno, and Russo placed Plaintiff in the chair, shackled his legs to the chair and handcuffed him behind his back through slots in the chair. Id. ¶¶ 41 – 44. Plaintiff was also bound to the chair by nylon strops that were placed over his chest, shoulders, and stomach. Id. ¶ 45. The chair was turned toward a wall, and Plaintiff was left in the room by himself. Id. ¶ 48. The record does not indicate that any attempt was made to clean the OC off of Plaintiff prior to his release from the chair several hours later.

Plaintiff estimates that he was held in held restraint chair from 4:30 pm, to 9:00 pm. (Doc. 46) ¶¶ 46; (Doc. 45-1) at 23. Plaintiff alleges that, about thirty minutes into his confinement, he soiled himself. (Doc. 46) ¶ 72. Approximately one hour into his confinement to the restraint chair, Officer Cox ("Cox"), a non-party to this suit, entered the room. Plaintiff told Cox that he was "'hurting'" and needed help, and asked him to call a "white shirt." Id. ¶ 49.

3

Cox told Plaintiff that he would contact somebody, and then left the room. Id. ¶ 50. This was the one and only time that anyone came into the room to check on Plaintiff prior to his release from the chair at 9:00 pm. Id. ¶¶ 51 – 52.

When Cox released Plaintiff from the chair, he contacted medical personnel, who refused to examine Plaintiff. Id. ¶¶ 54 – 55. Cox took Plaintiff to the RHU, where he was allowed to shower and provided new clothes. Id. ¶¶ 54 – 58.

Plaintiff was given a misconduct report from an unnamed officer at approximately 10:00 pm that night. Id. ¶ 59. Plaintiff never received a hearing regarding this misconduct, and alleges that the charges were fabricated by Defendant McConahy. On February 21, 2008 – 13 days after the incident – Plaintiff was transferred out of the Lawrence County Correctional Facility. Id. ¶ 64.

Plaintiff filed multiple administrative grievances regarding incident of February 8, 2008. Id. ¶ 62. Defendant Adamo responded to one of these grievances on February 20th, but all of the others went unanswered. Id. ¶¶ 62 – 63.

Plaintiff testified at his deposition that Defendants Russo, Fanno, and Struthers "did not do nothing but put [him] in a [restraint] chair. (Doc. 45-1) at 30. Plaintiff believes that Defendants Russo, Fanno, and Struthers, but for Defendant Rhodes's orders, would not have put him in the restraint chair. (Doc. 46) ¶ 61. These officers "didn't want to hurt" Plaintiff. Id. Plaintiff also testifies in his deposition that he was not resisting at any point during the incident, that he had not disobeyed orders, and did not understand why force was being used on him. (Doc. 45-1) at 20 – 21. In addition to the burning sensation that he was forced to endure due to his exposure to OC, Plaintiff avers that his hands and arms were numb due to his prolonged confinement to the restraints. Id. at 25.

Defendants present evidence, in the form of very brief affidavits and incident reports from the night in question, that their treatment of Plaintiff was justified. Defendant McConahy includes in his report, prior to his use of the OC spray, Plaintiff threatened to "shoot [him] on the streets," and that he shoved two meal trays and a cup at him through his food slot. (Doc. 45-2) at 3. Defendant McConahy reported that he felt at that point that Plaintiff "may pose a threat not only to [him] but to his cell mate who was [also] in the cell." Id. Defendant McConahy's report indicates that Plaintiff cuffed up after the second burst of OC spray "without further incident." Id. This report does not indicate that Plaintiff was decontaminated, or even that he was placed in a restraint chair.

Defendants Rhodes, Russo, Fanno, and Struthers all submit similarly short reports and affidavits, in which they indicate that Plaintiff was sprayed with OC, cuffed up, was taken to the RHU, and placed in a restraint chair. See (Docs. 45-3 – 45-6). They also indicate that, prior to Defendant Rhodes's use of OC spray, Plaintiff refused orders to cuff up, and threatened to stab officers if they attempted to extract him from his cell. See, e.g., (Doc. 45-5) at 2. None of these exhibits indicate that Plaintiff was ever cleaned of the OC spray, although they each note that Plaintiff threatened Defendant Rhodes after he was placed in the chair.

B. Analysis

In order for a claim to be cognizable under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the

5

Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), (*overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330 – 331 (1986)).

1. **Due Process Claims**

Plaintiff alleges in his complaint, and later testifies at his deposition, that he was confined to the RHU for 13 days on misconduct charges stemming from the incident of February 8, 2008, but never received a hearing on the matter. He argues that this violates his rights under the Due Process Clause of the Fourteenth Amendment. Plaintiff does not clarify whether his intent is to bring a claim based on substantive or procedural due process grounds. As a result, this Court must analyze this claim under both legal theories.

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels, 474 U.S. at 331). Official conduct violates substantive due process if it "shocks the conscience . . . ." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) (internal citations and quotes omitted). This standard "encompasses only the most egregious official conduct." Id. (internal citations and quotes omitted).

Prior to engaging in an analysis of the merits of Plaintiff's claims, it is first necessary to determine whether they are properly brought as substantive due process claims. The Supreme Court has noted that it has "'always been reluctant to expand the concept of substantive due process[.]'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Consequently, it has established the explicit source rule. Lewis, 523 U.S. at 843 – 44. Under this rule "'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be

analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 – 60 (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).

Here, it is clear that the acts of which Plaintiff complains arise under the concept of procedural due process, and are not properly brought under the theory of substantive due process. Additionally, even if this Court were to conclude that it was proper for Plaintiff's claims to proceed under substantive due process, there is nothing about his brief confinement to the RHU that shocks the conscience. Thus, to the extent that Plaintiff bases his claims on substantive due process, summary judgment will be granted in favor of Defendants.

In order to succeed on his claims based on his confinement to the RHU under the legal concept of procedural due process, Plaintiff must first set out facts that demonstrate he had a protected liberty interest impaired by Defendants' actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Morrissey, 408 U.S. at 481.

As the Supreme Court of the United States has recognized on multiple occasions, "prisoners do not shed all constitutional rights at the prison gate[.]" Sandin v. Conner, 515 U.S. 472, 485 (1995) (citing Wolff v. McDonnell, 418 U.S. 539, 555 (1984)). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485 (internal quotations and citations omitted). One of these limitations, in the context of state prison regulations, is that a liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

7

Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (internal citations and quotations omitted).

Under this standard, to the extent that Plaintiff claims a violation of due process with respect to his 13-day confinement to the RHU – which was instituted, allegedly, without any sort of notice or hearing – such a claim fails as a matter of law. Presuming the veracity of his allegations, Plaintiff fails to demonstrate that he suffered any sort of atypical or significant hardship with respect to his brief confinement to the RHU. Given that it has been held that administrative confinement for as long as 15 months is insufficient to implicate a liberty interest, see Griffin v. Vaughn, 112 F.3d 703, 706-07 (3d Cir. 1997), it is clear that Plaintiff's confinement without a hearing for such a short period of time, and under the conditions that he alleges, would not do so either. Accordingly, as it is apparent that they are entitled to it as a matter of law, summary judgment will be granted to Defendants on this claim.

Finally, to the extent that Plaintiff attempts to raise a claim under the Due Process Clause of the Fourteenth Amendment with respect to the use of the OC spray and his time in the restraint chair, summary judgment also must be granted to Defendants. The Due Process Clause creates a cause of action for unlawful punishments only to pre-trial detainees, to whom the protections of the Eighth Amendment are unavailable. Cf. Johnson v. Medlock, No. 09-234, 2011 WL 311359, at *7 (W.D.Pa. Jan. 28, 2011) (Lenihan, C.Mag.J.) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)); see also Yarnell v. Mendez, 509 F.Supp.2d 421, 430 (D.Del. 2007) ("Excessive force claims for those convicted of a crime are analyzed under the Eighth Amendment"). It is clear from the record that, at the time of the incidents on February 8, 2008, Plaintiff was incarcerated. As such, only an Eight Amendment analysis is appropriate.

## 2. First Amendment Claims

During his deposition, Plaintiff characterizes his First Amendment claims, which are without factual basis in the complaint, as arising from the fact that he tried to speak with Defendants during the incident of February 8, 2008, and they just ignored him. (Doc. 45-1) at 35. He does not allege that he was engaged in any sort of constitutionally protected activity. Insofar as he attempts to raise a stand-alone First Amendment claim based on this rationale, Defendants are entitled to summary judgment.[2] See, e.g., Parratt, 451 U.S. at 535.

## 3. Eighth Amendment

### a. Excessive Force

The Eighth Amendment protects prisoners against cruel and unusual punishment, but it does not protect an inmate against every minimal use of force. Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002). Force is deemed legitimate in a custodial setting so long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). A variety of factors are considered to determine if an application of force was applied maliciously and sadistically. These include: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of

---

[2] For this reason, to the extent that Plaintiff attempts to raise a claim for First Amendment retaliation, summary judgment must still be granted to Defendants. Retaliation is cognizable under section 1983 only if it is in response to some sort of constitutionally protected activity. Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).

a forceful response." Hudson v. McMillian, 503 U.S. 1, 7-8 (1992). The extent of any injuries suffered by an inmate during a use of force is also considered. Id. "Summary judgment in favor of a defendant is not appropriate if 'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (citing Whitley, 475 U.S. at 322).

Given the competing factual scenarios presented by Plaintiff and Defendants, as well as the nature of the evidence adduced by both sides in support of their positions, is it clear that material questions of fact exist regarding the necessity of the use of OC spray by Defendants McConahy and Rhodes, and whether Plaintiff was behaving in a manner that could reasonably be perceived as threatening. Indeed, under the facts adopted by Defendants for the purposes of the instant motion, there is no indication in this factual recitation that Plaintiff, at any time, disobeyed Defendants' orders, or was behaving in an unruly manner. Plaintiff echoes this story during his deposition.[3] Defendants submit some evidence, in the form of reports and very brief affidavits, which conflicts with Plaintiff's take on the events of that night. However, this, at best, creates a triable issue of fact on whether the use of the OC spray by Defendants McConahy and Rhodes was justified, or a wanton and sadistic attempt to inflict unnecessary pain. See Fed.R.Civ.P. 56. (stating that summary judgment is appropriate only if the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") Accordingly, summary judgment on these claims with respect to these Defendants will be denied.

---

[3] Plaintiff makes an ambiguous statement in his deposition regarding whether he was ordered to cuff up by Defendant Rhodes prior to her use of OC spray. (Doc. 45-1), at 29. Reading this statement in the light most favorable to Plaintiff, as this Court must, a factual issue regarding whether such an order was given still remains. See Stratechuk v. Bd. of Educ., South Orange–Maplewood Sch. Dist., 587 F.3d 597, 603 (3d Cir. 2009).

It is undisputed that Defendants Russo, Fanno, and Struthers were not present during Defendant McConahy's use of OC. It also is undisputed that, while they were present for the second burst, it was administered by Defendant Rhodes, and not these Defendants. Additionally, while the Court of Appeals for the Third Circuit has recognized that the failure of a corrections officer to intervene in certain acts, such as assaults, when there is a reasonable opportunity to do so, "can be the basis of liability for an Eighth Amendment violation under § 1983 . . ." Smith, 293 F.3d at 650, there is no indication that these Defendants had the ability to intervene in Defendant Rhodes's use of OC spray. As they point out, Defendants Russo, Fanno, and Struthers were each subordinates of Defendant Rhodes, and had no authority to order her not to use OC on Plaintiff. See (Doc. 47) at 14 – 15; see also Johnson v. Palockovich, No. 04-CV-1804, 2007 WL 431890, at *4 (M.D.Pa. Feb. 5, 2007) (holding that subordinate corrections officers were not liable for the use of OC spray by their superior). Here, Plaintiff has adduced no evidence that these Defendants had the authority to intervene in Defendant Rhodes's actions, and even goes so far as to state in his deposition that he believed that they "didn't want to hurt" him. (Doc. 46) ¶ 61. As such, summary judgment will be granted to Defendants Russo, Fanno, and Struthers based on Defendant Rhodes's use of OC spray.

      b. Restraint Chair

Plaintiff claims that the roughly four and one-half hours that he spent bound to a restraint chair while covered with OC violated his rights under the Eighth Amendment. Defendants provide little argument against this assertion, other than to deny it. See (Doc. 47) at 13 -14.

As an initial matter, it is unclear which Eighth Amendment standard applies to this particular claim. Support exists for the application of the above-stated excessive force standard.

11

See Zimmerman v. Schaeffer, 654 F.Supp. 2d 226, 248-49 (M.D.Pa. 2009) (noting this controversy and finding, under the circumstances of that case, that the above "excessive force" standard was appropriate); but see Womack v. Smith, No. 06-cv-2348, 2011 WL 819558, at *11 – *12 (M.D.Pa. Mar. 2, 2011) (finding that the conditions of confinement standard was better suited to claims involving prolonged restraint where the use of restraints was not directly tied to the use of force). This Court concludes that, given the temporal and factual disconnect between Defendants' use of OC spray on Plaintiff, and his confinement to a restraint chair for multiple hours, Plaintiff's claims regarding the chair are best analyzed under the conditions of confinement standard, as described below.

The Eighth Amendment's prohibition of cruel and unusual punishment forbids prison officials from engaging in the wonton infliction of pain. Hudson, 503 U.S. at 5. As the Supreme Court has recognized, "'[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" Hope v. Pelzer, 536 U.S. 730, 737 – 38 (2002) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). Indeed, "punitive treatment [that] amounts to gratuitous infliction of 'wanton and unnecessary' pain" is clearly prohibited by Eight Amendment jurisprudence. Hope, 536 U.S. at 738. In making this determination in the context of prison conditions, this Court must ascertain whether the officials involved acted with "deliberate indifference" to the inmates' health or safety. Id. (citing Hudson, 503 U.S. at 8).

To violate the Eighth Amendment's prohibition of cruel and unusual punishment, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson, 503 U.S. at, 8-9. A plaintiff must prove

that the deprivation that he suffered is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions – considered alone constitutionally insufficient – may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need. . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991).

The deliberate indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. This reasoning is grounded in the axiom that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)). A trier of fact may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. Farmer, 511 U.S. at 842.

Based on the evidence on the record, it is clear that a triable issue of fact exists as to whether Plaintiff was exposed to unnecessary pain while in the restraint chair, and whether this violated "contemporary standards of human decency." It is undisputed, at least, for the purposes of the current motion, that Plaintiff was forced to sit, restrained, for a period of hours while he was covered in OC spray. Plaintiff has further adduced evidence that he was in pain the entire time, and that such pain served no penological purpose. See Zimmerman, 654 F.Supp.2d at 250 (finding that a triable issue of fact existed on an Eighth Amendment claim where plaintiffs adduced evidence that they were forced to endure "extended restraint while covered with OC spray, which caused a painful burning sensation on their skin"). With respect to the second

13

prong, the risk to Plaintiff's health and safety were sufficiently obvious that a genuine factual question exists whether Defendants Rhodes, Fanno, Russo, and Struthers possessed sufficient culpability for liability to attach under this standard. Accordingly, summary judgment shall be denied on this claim.

### 4. Qualified Immunity

Qualified immunity is governed by Saucier v. Katz, in which the Supreme Court held that a court must consider (1) whether the facts "show that the officer's conduct violated a constitutional right[;]" and then (2) "is a violation could be made out . . . the next, sequential step is to ask whether the right was clearly established."[4] 533 U.S. 194, 201 (2001).

Although qualified immunity generally is a question of law that should be considered at the earliest possible stage, a genuine issue of fact may preclude the grant of summary judgment based on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325 (3d Cir. 2009); see also Curley v. Klem, 298 F.3d 271, 278 (3d Cir 2002) ("Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis").

For the reasons stated above in Part B.3.b of this memorandum, *supra*, the undersigned has concluded that genuine issues of fact exist as to whether Plaintiff's confinement to the

---

[4] The order of the Saucier analysis was relaxed somewhat by Pearson v. Callahan, in which the Court held that "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." 555 U.S. 223, 230 (2009). For reasons that are evident, the two-step Saucier procedure is the more helpful one in disposing of the qualified immunity defense currently before this Court.

14

restraint chair, under the conditions alleged, is sufficient to violate the Eighth Amendment. The task for this Court now is to determine whether the contours of the Eighth Amendment were sufficiently well-defined to allow a reasonable officer in the place of Defendants Russo, Fanno, and Struthers to realize that such actions would violate the Eighth Amendment. Put another way: this Court must determine whether a reasonable officer would not, as a matter of law, know that restraining an inmate covered in OC spray, who was complaining of pain and of feeling as if he were "burning," and leaving him to suffer the effects of the spray for four and-one-half hours, without making any attempt to rinse off the spray, would violate the Eighth Amendment's prohibition of cruel and unusual punishment. Framed in this manner, the answer to this question is obvious.

The right to be free from the unnecessary and wonton infliction from pain has been has been well-established in American jurisprudence for years. See e.g., Whitley, 475 U.S. at 319. In Hope, the Supreme Court recognized the clarity of the Eighth Amendment implications with respect to the seven-hour restraint of an inmate who had already been subdued, when coupled with his subjection to unnecessary pain caused by the restraint, unnecessary exposure to the sun, thirst, and deprivation of bathroom breaks. 536 U.S. at 738. While the facts of this case are not as egregious as those in Hope, there is, at the very least, enough overlap to call into question whether reasonable officers would have known that their actions were prohibited by the Eighth Amendment. Accordingly, summary judgment to Defendants Russo, Fanno, and Struthers on the theory of qualified immunity will be denied.

15

**5. Personal Involvement**

It is well established that no liability exists under section 1983 solely based on a theory of vicarious liability or *respondeat superior*. Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990). Instead, in order for section 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'" Id. at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In situations where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, section 1983 liability may attach. See Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988) (*overruled in part on other grounds by* Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). At a minimum, liability in such a case is appropriate "'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'" Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).

The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement. See e.g. Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D.Pa. Sept. 5, 1997)); see also Pressley v. Beard, 255 F.App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective

16

actions when grievances or investigations were referred to them); Cf. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding that a state's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause).

Plaintiff's claims against Defendant Adamo, and remaining claim against Defendant Porada, are based on their supervisory positions and involvement in the administrative grievance procedure. Accordingly, summary judgment will be granted in their favor.

### 6. Official Capacity Claims

When an individual is sued in his or her official capacity, the action is considered to be against the governmental entity which he or she represents. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). However, a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Serv.s, 436 U.S. 658, 694 (1978). Instead, in order to state a claim of municipal liability under section 1983, a plaintiff must allege that he or she was subject to a constitutional violation as the result of some identifiable official custom or policy of a municipality. Faylor v. Szupper, 411 F.App'x 525, 530 – 31 (3d Cir. 2011) (citing Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998)). Additionally, a plaintiff must establish that the municipality was the moving force behind his alleged injury. Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S 397, 405 (1997). This means that the "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. (citations omitted). Here, Plaintiff fails even to allege any custom or policy of Lawrence County by which Defendants allegedly violated Plaintiff's constitutional rights, much less adduce evidence supporting such an allegation.

17

Accordingly, summary judgment will be granted to remaining Defendants on all claims made against them in their official capacities.

AND NOW, this 30th day of June, 2011,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment (Doc. 44) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants Adamo and Porada are granted summary judgment with respect to all claims against them.

IT IS FURTHER ORDERED that Defendants Fanno, Russo and Struthers are granted summary judgment only with respect to their involvement in Defendant Rhodes's use of OC spray on Plaintiff.

IT IS FURTHER ORDERED that summary judgment is granted to all Defendants on Plaintiff's due process claims, First Amendment claims, and in their official capacities.

IT IS FURTHER ORDERED that Defendants' motion is DENIED in all other respects.

s/Cathy Bissoon  
Cathy Bissoon  
United States Magistrate Judge

cc:
**ALLEN JEROME SUPPLES**
DZ5713
SCI Mahanoy
301 Morea Road
Frackville, PA 17932